UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

___

| | |
|---|---|
| LATOYA COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:12-cv-02156-JPM-dkv |
| ) | |
| UNITED HEALTHCARE SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

___

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OR, IN THE ALTERNAITVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**
___

Before the Court is Defendant's Motion for Partial Dismissal or, in the Alternative, Motion for Partial Summary Judgment, which was filed on January 9, 2013. (ECF No. 47.) Plaintiff responded in opposition on January 11, 2013. (ECF No. 48.) Defendant did not file a reply.

For the reasons stated below, Defendant's Motion for Partial Dismissal or, in the Alternative, Motion for Partial Summary Judgment (ECF No. 47) is GRANTED IN PART and DENIED IN PART.

I. **BACKGROUND**

This action involves claims of harassment, discrimination, and retaliation in the employment context pursuant to 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2006), and the Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. §§ 4-21-101 to 4-21-1004 (West 2012). (Am. Compl., ECF No. 35, ¶ 1.) This action also involves claims alleging violations of the Family Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601-2654 (2006). (Id.)

On March 24, 2008, Plaintiff Latoya Coleman ("Plaintiff" or "Coleman") was hired as a Sales Coordinator by Defendant United Healthcare Services, Inc. ("United Healthcare"). (Charge of Discrimination, ECF No. 47-2 at PageID 197.)[1] While employed by United Healthcare, Coleman's supervisors included Walter Harrison ("Harrison") and, after Harrison left United Healthcare, William Bosarge ("Bosarge"). (Id. at PageID 196-97; see also Am. Compl., ECF No. 35, ¶¶ 8, 28.) On May 31, 2011, United Healthcare terminated Coleman's employment. (Charge of Discrimination, ECF No. 47-2 at PageID 198; see also Am. Compl., ECF No. 35, ¶ 40; Def.'s Mem. in Supp., ECF No. 47-1, at 2.)

While employed by United Heathcare, Coleman filed two Charges of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"). On September 27, 2010, Coleman filed a Charge of Discrimination that was given the EEOC charge number of 490-2010-03004. (ECF No. 47-2

---

[1] The Court cites to "PageID" numbers when documents with the same Electronic Case Filing Number are not consecutively paginated.

at PageID 196.)  In that Charge of Discrimination, Coleman stated that "I believe that I have been discriminated against due to my race, Black [sic] and retaliated against for filing an internal complaint regarding denial of promotions based on race in violation of [Title VII]."  (Id.)

On May 23, 2011, Coleman filed a Charge of Discrimination that was given the EEOC charge number of 490-2011-01779.  (ECF No. 47-2 at PageID 197.)  In that Charge of Discrimination, Coleman stated that "I believe that I was retaliated against for filing a previous charge of discrimination (EEOC charge # 490-2010-03004)" because "[i]n March 2011, I received a lower evaluation rating which caused me not to receive a bonus." (Id.)  On May 31, 2011, the date of her termination, Coleman amended her May 23, 2011, Charge of Discrimination to include the allegation that "Mr. Bosarge told me I was terminated because I allegedly submitted falsified doctors' excuses and FMLA paperwork."  (ECF No. 47-2 at PageID 198.)

On February 27, 2012, Coleman filed a timely pro se Complaint in this Court (the "Original Complaint").  (Compare Dismissal and Notice of Rights, ECF No. 47-2 at PageID 199, and Dismissal and Notice of Rights, ECF No. 47-2 at PageID 200, with Original Compl., ECF No. 1, ¶ 8.)  Plaintiff used a pro se complaint form, which stated that the action was "brought pursuant to Title VII of the Civil Rights Act of 1964 for

employment discrimination." (ECF No. 1 ¶ 1.) Plaintiff indicated, by choosing certain options printed on the complaint form, that United Healthcare "terminated plaintiff's employment" and "failed to promote plaintiff" due to her race and sex. (Id. ¶ 9.)

In support of the claims in her Original Complaint, Coleman alleged that someone "called me a 'Coon' more than once in writing/emails," and "urinated on my mail at work." (Id.) She also alleged that Harrison "attempted to get me into a hotel room" and "stated sexual advancements [sic] towards me." (Id. ¶ 10.)

Coleman also alleged that she was not promoted due to her race. She alleged that someone "told me that I would not be promoted because I was young & black." (Id. ¶ 9.) She also alleged that "in 2010 Walter Harrison discriminated against me by saying he is a 'Red Neck' & I am a funny 'coon' because I wanted a job promotion." (Id. ¶ 10.)

Furthermore, Coleman alleged that Harrison offered to trade sex for a promotion: Harrison "stated [sic] if I was with him one on one I could receive a promotion." (Id.)

Regarding her termination, Coleman alleged that she was retaliated against for reporting Harrison's conduct. Coleman alleged that, after Harrison left United Healthcare, Harrison's "manager became my manager & he was upset with me for filing my

4

1st EEOC Charge against [Harrison] so he terminated me while I was on intermittent FMLA [sic] for stress [sic] he retaliated." (Id. at 10.)

Furthermore Coleman alleged that she was terminated after being accused of forging a document: "I filed two charges with [sic] EEOC [sic] they retaliated against me by forging my doctors [sic] name on an accommodation form & pinning it on me." (Id. ¶ 9.)

On November 8, 2012, Coleman, with the help of counsel, filed her First Amended Complaint (the "Amended Complaint"). (ECF No. 35.) In her Amended Complaint, Coleman asserts claims for racial harassment in violation of § 1981 and sexual and racial harassment in violation of Title VII and the THRA; racial discrimination and retaliation for failure to promote or transfer her in violation of § 1981, Title VII, and the THRA; retaliatory discharge in violation of § 1981, Title VII, and the THRA; and denial and abuse of her FMLA rights. (Id. ¶ 41.)

In support of the claims in her Amended Complaint, Coleman alleges that Harrison referred to her as a "coon" (id. ¶ 16) and that she "received mail in her office mailbox wet with urine" (id. ¶ 22). Coleman further alleges that "Harrison made numerous sexual advances towards Plaintiff, including asking Plaintiff to come back to his hotel room" (id. ¶ 13), and that "Harrison wrote Plaintiff that he was going to Outback

5

'Coonhouse' and that his 'dessert will be my banana in your split'" (id. ¶ 12).

Coleman also alleges that she was not promoted, or transferred to a different position, due to her race. She alleges that: "Harrison stated that Plaintiff's efforts at transfer to a different position would be futile because: 'face it your [sic] super young, black and you don't communicate effectively . . . . . [sic]' Harrison stated that Plaintiff was a 'funny coon' and that he was 'a proud redneck.'" (Id. ¶ 16 (first alteration in original).)

Furthermore, Coleman alleges that Harrison offered to trade sex for a promotion. While Coleman was visiting United Healthcare's Brentwood office, Coleman alleges that: "Harrison requested that Plaintiff allow him to visit her hotel room so that they could be 'one-on-one.' Harrison then offered 'quid pro quo' favors — that in exchange for 'one on one in the hotel,' Plaintiff would be promoted to Sales Coordinator over Tennessee." (Id. ¶ 10.)

Regarding her termination, Coleman alleges that Bosarge was upset with her because she reported Harrison's conduct. Coleman alleges that: "Harrison's boss, [Bosarge], resented Harrison being terminated and placed the blame for that result upon Plaintiff's complaints against him" (id. ¶ 28), and that, "[i]n

May 2011, Bosarge yelled at Plaintiff that she had 'made a white man lose his job'" (id. ¶ 29).

Furthermore Coleman alleges that she was subsequently terminated for forging an FMLA accommodation form. Coleman alleges that Bosarge was responsible for the forgery: "Bosarge . . . took Plaintiff's confidential medical information and prepared a fictitious FMLA accommodation request form. Bosarge forged Plaintiff's doctor's signature to make it appear genuine." (Id. ¶ 36.) Coleman also alleges that she was blamed for the forgery: Bosarge "claimed that Plaintiff had prepared [the forged FMLA accommodation request form] and that she, not he, had falsified her physician's signature" (id. ¶ 37), and "[t]he falsified FMLA paperwork (by Bosarge) was the basis" for Plaintiff's termination on May 31, 2011 (id. ¶ 40).

**II. ANALYSIS**

In its Motion, Defendant requests that the Court dismiss Plaintiff's Title VII sexual- and racial-harassment claims and Plaintiff's THRA claims:

> Plaintiff's [THRA] claims (Counts I(b), II(c) and III(c)) are untimely, and Plaintiff has failed to exhaust her administrative remedies in relation to the Title VII [sexual- and racial-] harassment claims (Count I(c)). Accordingly, Defendant respectfully requests that the Court dismiss Counts I(b), I(c), II(c) and III(c) of Plaintiff's Amended Complaint.

(ECF No. 47 at 1.)

The Court addresses, in turn, the standard of review, Plaintiff's Title VII sexual- and racial-harassment claims, and Plaintiff's THRA claims.

## A. Standard of Review

In its Motion, Defendant requests the Court to act pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56 ("Rule 12(b)(1)," "Rule 12(b)(6)," and "Rule 56," respectively):

> [Defendant], pursuant to Fed R. Civ. P. 12(b)(1) and (6), moves the Court to dismiss portions of this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, respectively. In the alternative, Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56, as there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

(ECF No. 47 at 1.)

The Court briefly explains the standards of review under Rule 12(b)(1), Rule 12(b)(6), and Rule 56.

### 1. Lack of Subject-Matter Jurisdiction

Under Rule 12(b)(1), a party can assert a defense to a claim due to the court's "lack of subject-matter jurisdiction" over the claim. Fed. R. Civ. P. 12(b)(1).

"Challenges to subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) are categorized as either a facial attack or a factual attack." McCormick v. Miami Univ., 693 F.3d 654, 658 (6th Cir. 2012). "A facial attack on the subject-matter jurisdiction alleged in the complaint

8

questions merely the sufficiency of the pleading." O'Bryan v. Holy See, 556 F.3d 361, 375-76 (6th Cir. 2009) (internal quotation marks omitted). "Under a facial attack, all of the allegations in the complaint must be taken as true." McCormick, 693 F.3d at 658 (internal quotation marks omitted). The complaint "must contain non-conclusory facts which, if true, establish that the district court had jurisdiction over the dispute." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 440 (6th Cir. 2012).

"[A] factual attack . . . raises a factual controversy" regarding the court's subject-matter jurisdiction. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). "Where . . . there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations" in the complaint. Id. "Under a factual attack . . . the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." McCormick, 693 F.3d at 658 (internal quotation marks omitted). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." Gentek Bldg. Prods., Inc., 491 F.3d at 330.

In the case presently before this Court, Plaintiff claims that the Court has federal-question jurisdiction over her § 1981, Title VII, and FMLA claims, see 28 U.S.C. § 1331 (2006), and "supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, including the [THRA claims]." (Am. Compl., ECF No. 35, ¶ 5.) Plaintiff also claims that this Court has diversity jurisdiction over her claims, see 28 U.S.C. § 1332(a) (2006), "because the controversy is between 'citizens' of different states with an amount in controversy exceeding $75,000." (Id.)

**2. Failure to State a Claim**

Under Rule 12(b)(6), a court can dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

> In assessing a complaint for failure to state a claim, [a court] must construe the complaint in the light most favorable to the plaintiff, accept all well pled factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Dudenhoefer v. Fifth Third Bancorp, 692 F.3d 410, 416 (6th Cir. 2012) (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**3. The Summary-Judgment Standard**

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012). "In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 730 (6th Cir. 2012) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

**B. Plaintiff Concedes Her Title VII Sexual- and Racial-Harassment Claims, so Those Claims Are Dismissed.**

Defendant argues that "Plaintiff failed to exhaust administrative remedies in relation to her Title VII sexual and racial harassment claims." (Def.'s Mem. in Supp., ECF No. 47-1, at 3.) Regarding her sexual-harassment claim, Defendant argues that "Plaintiff has not filed a Charge of Discrimination with the EEOC based on sex discrimination and/or harassment." (Id. at 3.) Regarding her racial-harassment claim, Defendant argues that, "[w]hile Plaintiff filed a race discrimination claim with the EEOC for failure to promote, at no time did Plaintiff file a [racial-] harassment claim." (Id. at 5.)

11

"Before a plaintiff may sue under Title VII in federal court, she must first exhaust her administrative remedies, one component of which is timely filing a 'charge' with the EEOC." Williams v. CSX Transp. Co., 643 F.3d 502, 507-08 (6th Cir. 2011).

> [I]n order for an EEOC filing to constitute a "charge" that is necessary to exhaust an employee's administrative remedies under Title VII, the filing (1) must be "verified" — that is, submitted under oath or penalty of perjury, 29 C.F.R. § 1601.3(a); (2) must contain information that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," id. § 1601.12(b); and (3) must comply with [Fed. Express Corp. v. Holowecki, 552 U.S. 389, 398, 402 (2008)] — that is, an "objective observer" must believe that the filing "taken as a whole" suggests that the employee "requests the agency to activate its machinery and remedial processes."

Williams, 643 F.3d at 509.

In her Response, however, Plaintiff concedes her Title VII sexual- and racial-harassment claims:

> Plaintiff's racial harassment claims are already encompassed by the longer statute of limitation afforded to her under 42 U.S.C. § 1981. And her sexual harassment claim is encompassed by her timely filing under the THRA. . . . So, rather than engage in a tedious 'scope of charge' argument, Plaintiff concedes the racial and sexual harassment claims under Title VII. She does not concede any other claims under Title VII.

(ECF No. 48 at 3.)

Plaintiff concedes that she has not exhausted her administrative remedies regarding her Title VII sexual- and

racial-harassment claims, so Defendant is entitled to relief regarding those claims.  Plaintiff concedes that she did not "first exhaust her administrative remedies" regarding her sexual- and racial-harassment claims because those claims were not within the scope of the Charges of Discrimination that she filed with the EEOC.  See Williams, 643 F.3d at 507-09.  As a result, Plaintiff does not "state a claim to relief that is plausible on its face" regarding her Title VII sexual- and racial-harassment claims, and Defendant is entitled to relief pursuant to Rule 12(b)(6).  See Dudenhoefer, 692 F.3d at 416 (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

Since dismissal of the sexual- and racial-harassment claims is appropriate[2] under 12(b)(6), the Court need not consider whether those claims could survive summary judgment under Rule 56.

Defendant's Motion (ECF No. 47), therefore, is GRANTED regarding Plaintiff's Title VII sexual- and racial-harassment claims.  Plaintiff's Title VII sexual- and racial-harassment claims, therefore, are hereby DISMISSED WITHOUT PREJUDICE.

---

[2] Relief pursuant to Rule 12(b)(1) is inappropriate because "exhaustion is not a jurisdictional prerequisite" for Title VII claims.  See Hill v. Nicholson, 383 F. App'x 503, 508 (6th Cir. 2010); Wrobbel v. IBEW, Local 17, 638 F. Supp. 2d 780, 792 (E.D. Mich. 2009).

**C. Plaintiff's THRA Claims Are Not Time-Barred and, Therefore, Are Not Dismissed.**

Pursuant to Tennessee law, "[a] civil cause of action under [the THRA] shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases." Tenn. Code Ann. § 4-21-311(d); Booker v. Boeing Co., 188 S.W.3d 639, 648 (Tenn. 2006). District courts in the Sixth Circuit apply this statute of limitations to THRA claims. See, e.g., Cline v. BWXT Y-12, LLC, 521 F.3d 507, 511 (6th Cir. 2008) (affirming the district court's application of the one-year limitation established in Tenn. Code Ann. § 4-21-311(d)).

Defendant argues that all of Plaintiff's THRA claims are barred by the one-year statute of limitations because those claims were not raised until Plaintiff filed her Amended Complaint:

> [A] THRA suit must be filed within one year of the date that the alleged unlawful conduct ceased. Given that Plaintiff alleged, for the first time, a violation of the THRA in her November 8, 2012 [sic] Amended Complaint, any unlawful conduct that allegedly occurred prior to November 8, 2011 [sic] is barred by the applicable statute of limitations. . . . [The] violations [of the THRA claimed by Plaintiff] are alleged to have occurred on or prior to May 31, 2011. As these claims are outside of the limitations period, Plaintiff's THRA claims are barred.

(Def.'s Mem. in Supp., ECF No. 47-1, at 3 (citations omitted).)

Plaintiff relies on Federal Rule of Civil Procedure 15(c)(1)(B) to argue that her "THRA claims under the Amended

14

Complaint relate back to the original filing date of February 27, 2012 [sic] and, being well inside a year of Plaintiff's termination, are timely filed." (Pl.'s Resp., ECF No. 48, at 2-3.)

The Court first determines whether Plaintiff's THRA claims relate back to the date of the Original Complaint and then determines whether Defendant is entitled to relief under Rule 12(b)(1), Rule 12(b)(6), or Rule 56.

1. **Plaintiff's THRA Claims Relate Back to the Date of the Original Complaint Pursuant to Federal Rule of Civil Procedure 15(c)(1)(B).**

Under Federal Rule of Civil Procedure 15(c)(1)(B),[3] "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

> When applying this standard to the facts of a given case, we give meaning to those terms "not by generic or ideal notions of what constitutes a 'conduct,

---

[3] When a state statute of limitations would otherwise bar a claim, federal courts apply Federal Rule of Civil Procedure 15(c) to determine if a claim relates back to the time of the original pleading. See Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 483-85 (6th Cir. 1973) (applying Federal Rule of Civil Procedure 15 when an Ohio statute of limitations would have barred a claim); Kansa Reinsurance Co. v. Cong. Mortg. Corp., 20 F.3d 1362, 1366 n.4 (5th Cir. 1994) ("Rule 15(c)'s relation back doctrine, though it has the ultimate effect of 'tolling' limitations, is considered by this court to be purely procedural and is thus governed by federal law."); 19 Charles Alan Wright et al., Federal Practice and Procedure § 4509 (2d ed. 1996). Even if state law were applied, Plaintiff's claims would relate back. See Tenn. R. Civ. P. 15.03; Hawk v. Chattanooga Orthopaedic Grp., P.C., 45 S.W.3d 24, 33 (Tenn. Ct. App. 2000).

transaction, or occurrence,' but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." The Rule also must be interpreted in light of the "fundamental tenor of the Rules," which "is one of liberality rather than technicality."

Hall v. Spencer Cnty., Ky., 583 F.3d 930, 934 (6th Cir. 2009) (citations omitted) (quoting United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 516 (6th Cir. 2007) and Miller v. Am. Heavy Lift Shipping, 231 F.3d 242, 248 (6th Cir. 2000)).

In the case presently before this Court, Harrison's and Bosarge's treatment of Plaintiff while Plaintiff was employed by Defendant, as alleged in the Original Complaint, is also the basis for Plaintiff's THRA claims in her Amended Complaint. (Compare ECF No. 1, with ECF No. 35); see also supra Part I. Under Federal Rule of Civil Procedure 15(c)(1)(B), Plaintiff's THRA claims relate back to the date of the Original Complaint. Plaintiff's Amended Complaint "merely asserts a new legal theory arising out of the same occurrence[s] as asserted in the original complaint," so "Defendant[] had adequate notice of the nature and scope of the allegations in the amended complaint." See Hall, 583 F.3d at 934 (holding that a new constitutional claim related back because it was based on the same pattern of conduct identified in the original complaint).

16

**2.  Defendant's Argument Is Meritless, so Defendant Is Not Entitled to Relief.**

Defendant is not entitled to relief under Rule 12(b)(1), Rule 12(b)(6), or Rule 56.  Pursuant to Rule 12(b)(1), Defendant's argument regarding the statute of limitations is meritless and does not affect the Court's subject-matter jurisdiction over Plaintiff's THRA claims.  Pursuant to Rule 12(b)(6), Defendant's argument regarding the statute of limitations does not affect Plaintiff's ability to "state a claim to relief that is plausible on its face" regarding her THRA claims.  Dudenhoefer, 692 F.3d at 416 (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).  And, pursuant to Rule 56, Defendant's arguments regarding the relevant statute of limitations do not establish that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" regarding Plaintiff's THRA claims. Fed. R. Civ. P. 56(a); see also Chapman, 670 F.3d at 680.

Defendant's Motion (ECF No. 47), therefore, is DENIED regarding Plaintiff's THRA claims.

**III. CONCLUSION**

For the reasons stated above, Defendant's Motion for Partial Dismissal or, in the Alternative, Motion for Partial Summary Judgment (ECF No. 47) is GRANTED IN PART and DENIED IN PART.

17

Defendant's Motion is GRANTED regarding Plaintiff's Title VII sexual- and racial-harassment claims.  Those claims are hereby DISMISSED WITHOUT PREJUDICE.

Defendant's Motion is DENIED regarding Plaintiff's THRA claims.

**IT IS SO ORDERED**, this 6th day of March, 2013.

/s/ Jon P. McCalla
JON PHIPPS McCALLA
CHIEF U.S. DISTRICT JUDGE